UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   v.<br><br>EZEQUIEL SANCHEZ-JIMENEZ<br>also known as "Ezequiell Sanchez-Jimenez" | No. 18 CR 855<br><br>Judge John J. Tharp, Jr. |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits its position paper as to sentencing factors, and asks this Court to impose a sentence of 36 months' imprisonment, along with a period of three years' supervised release.

**I.    BACKGROUND**

   **A.    Defendant's Immigration and Criminal History, 1996 to 2010**

According to immigration records, the defendant, Ezequiel Sanchez-Jimenez, a 42 year-old native and citizen of Mexico, has illegally entered the United States approximately 19 times since 1996. PSR ¶ 10. For each of his first approximately eight illegal entries, between March 7, 1996, and March 7, 1997, he was apprehended and voluntarily returned to Mexico, and no criminal charges ensued. PSR ¶ 11.

The defendant's first prosecution for an immigration crime occurred following his approximately ninth illegal entry more than 22 years ago. On or about March 11, 1997, the defendant was convicted in the United States District Court for the Western District of Texas, of entry by an unauthorized alien, and was sentenced to 100 days'

imprisonment. PSR ¶ 40. On or about July 2, 1997, the defendant left the United States via El Paso, Texas, pursuant to a voluntary departure order. PSR ¶ 12.

Following that first conviction, the defendant illegally entered on approximately five more occasions over the span of less than four years, beginning less than a month after he departed the United States, between July 27, 1997, and April 17, 2001; for each of those entries, he was apprehended and voluntarily returned to Mexico, and no criminal charges for the immigration violations ensued. PSR ¶ 13.

The defendant returned illegally for the approximately 15th time at some point before June 28, 2007. On or about that date, the defendant was convicted in the Circuit Court of Cook County, Illinois, of endangering the life/health of a child, in violation of 720 ILCS 5/12-21.6(a), and he was sentenced to 12 months' court supervision. PSR ¶ 14. Following that conviction, an order of removal was entered against the defendant. On or about June 15, 2010, the defendant was removed from the United States via Brownsville, Texas, pursuant to the removal order. PSR ¶ 14.

    **B.    Defendant's Immigration and Criminal History, 2010 to 2018**

After being ordered removed, between June 2010 and November 2018, the defendant reentered without authorization four times, despite serving sentences of 12 months' imprisonment, 15 months' imprisonment, and 8 months' imprisonment during that same timeframe.

Specifically, at some point between his initial removal on June 15, 2010 and March 21, 2012, the defendant returned to the United States without inspection or admission by United States immigration authorities. We know he was here by March

21, 2012, because, on or about that date, the defendant was convicted in the Circuit Court of Cook County, Illinois, of unlawful possession of a firearm, in violation of 720 ILCS 5/24-1(a)(4), and was sentenced to 135 days' imprisonment. PSR ¶ 48. On or about December 17, 2013, the defendant was again removed from the United States, via Brownsville, Texas, under the name "Ezequiell Sanchez-Jimenez," pursuant to the removal order. PSR ¶ 15.

Within less than nine months of that removal, at some point between December 17, 2013, and August 25, 2014, the defendant returned to the United States without inspection or admission by United States immigration authorities. On or about August 25, 2014, the defendant was convicted of reentry by an unauthorized alien in the United States District Court for the Western District of Texas, and was sentenced to 12 months' imprisonment and one year of supervised release. PSR ¶ 49. On or about January 29, 2015, the defendant was removed from the United States via Laredo, Texas, pursuant to the removal order. PSR ¶ 16.

Within less than five months of that removal, at some point between January 29, 2015, and May 10, 2015, the defendant returned to the United States without inspection or admission by United States immigration authorities. On May 10, 2015, Sanchez-Jimenez was arrested by Chicago police for battery; the female victim alleged that he had punched her in the face. PSR ¶ 54. The warrant in that case remains outstanding. *Id.* The defendant was again charged with reentry of an unauthorized alien, this time in this courthouse. On or about March 4, 2016, the defendant was convicted in the United States District Court for the Northern District

of Illinois, No. 15 CR 682 (Bucklo, J.), and was sentenced to 15 months' imprisonment. PSR ¶ 50. On or about October 14, 2016, his term of supervised release from his case in the Western District of Texas was revoked due to the reentry conviction in this district, and he was sentenced to a consecutive term of 8 months' imprisonment. PSR ¶ 49. Following that combined sentence of 23 months' imprisonment, on or about August 9, 2017, the defendant was removed from the United States once again. PSR ¶ 17.

### C. Offense Conduct

And here we are once more. Even after the most recent, 23-month prison sentence, the defendant returned to the United States without inspection or admission by United States immigration authorities within less than five months of his removal. According to the defendant's post-arrest admissions, he paid a smuggler $5,000 to cross a river and entered without inspection at Eagle Pass, Texas in January 2018. PSR ¶ 23. On or about November 2, 2018, the defendant was present and found in the United States at the Will County Courthouse in Joliet, Illinois. PSR ¶¶ 18, 20.

Immigration records show that at no time after his removals on June 15, 2010, December 17, 2013, January 29, 2015, and August 9, 2017, and before November 2, 2018, did the defendant apply for or obtain permission to reapply for admission into the United States. PSR ¶ 18.

In pleading guilty, Sanchez-Jimenez admitted to the removals identified above; he admitted to illegally reentering the United States at some point before November 2, 2018; he admitted that he had no claim to United State citizenship or

4

lawful residence; and he admitted that at no point after his removals did he obtain permission to reapply for admission into the United States. Doc. 16, Plea Agreement ¶ 6.

## II. GUIDELINES CALCULATIONS

The government agrees with the offense level and criminal history calculations set forth in the PSR submitted by the United States Probation Office. The government agrees that the total offense level is 10—a surprisingly low number given the recidivism here. PSR ¶ 34. But the Guidelines provide for no adjustment in the offense level based on multiple prior illegal reentry offenses, so the defendant is no worse off for having two rather than one such conviction under his belt. With a criminal history category of IV, the resulting advisory Guidelines range is 15 to 21 months' imprisonment—the same criminal history category and the same range Sanchez-Jimenez faced at his sentencing before Judge Bucklo in 2016. PSR ¶ 121.

The Guidelines range fails to account for the defendant's recidivism in part because he was not sentenced to a term of supervised release for his last conviction. Had that been part of his sentence, perhaps the defendant would have been deterred from returning so quickly after his removal, and we would not be here. Instead, according to his post-arrest admissions, the defendant illegally reentered within about five months of the deportation that followed his release from prison. Had he done so while serving a term of supervised release, he would have received an additional 2 criminal history points here, placing him in criminal history category V rather than IV, with a Guidelines range of 21 to 27 months. *See* U.S.S.G. § 4A1.1(d).

5

Indeed, had a term of supervised release been imposed in the case before Judge Bucklo, and had Sanchez-Jimenez been found in violation of the conditions of his supervised release based on the illegal reentry here, the Guidelines would recommend an additional sentence of 12 to 18 months' imprisonment for that violation (based on a Grade B violation and his Criminal History Category of IV at the time of the original offense). *See* U.S.S.G. § 7B1.4(a). Under the Guidelines, the total time he would have faced, between this case and the supervised release violation, is 33 to 45 months' imprisonment.

### III. SENTENCING FACTORS AND GOVERNMENT'S RECOMMENDATION

Considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends a 36-month term of imprisonment, above the applicable Guidelines range, along with a three-year term of supervised release. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Sanchez-Jimenez's offense, promote respect for the law, provide just punishment, and afford adequate deterrence. The government's recommendation is primarily driven by Sanchez-Jimenez's unusual degree of recidivism and the failure of shorter sentences to deter him.

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Given his immigration and criminal history, Sanchez-Jimenez has long been well aware that he is not allowed to be here, and that he will be criminally prosecuted for returning. But even after facing escalating sentences of imprisonment as consequences for his immigration offenses—100 days; then 12 months; then a

6

combined 23 months—he returned within five months of the last sentence. This is his fourth prosecution for immigration offenses, and his second prosecution for illegal reentry in this district in three years.

In addition to his past convictions for immigration offenses, Sanchez-Jimenez also has been convicted of endangering the life/health of a child and unlawful possession of a firearm, and he has been arrested multiple times for battery, often based on disturbing allegations of violence against women. His wife, who was the alleged victim associated with at least one of those arrests, indicated to Probation that there is no future for the two of them and that they will be separated following his deportation. PSR ¶¶ 65, 84, 88.

### B. The Need to Promote Respect for the Law and Afford Adequate Deterrence

The court should impose a sentence that promotes respect for the law and deters Sanchez-Jimenez from future criminal conduct, as none of his prior sentences have done so. *See* 18 U.S.C. § 3553(a)(2)(A). Notably, Sanchez-Jimenez has made few plans for his return to Mexico. He is unsure of where he will live, and there is no indication in the PSR that he has committed to stay there. PSR ¶ 85. An appropriate sentence must provide "adequate deterrence" because his drive to return to the United States is self-evident. *See* 18 U.S.C. § 3553(a)(2)(B).

The government's recommendation of 36 months' imprisonment—a sentence that is still less than the total amount of imprisonment he has previously received for immigration offenses—reflects a reasonable escalation in punishment to account for

7

these sentencing goals. Where 100 days and then 12 months and then 23 months failed to deter, a lesser sentence cannot be expected to succeed.

### C. Supervised Release

As noted above, this case illustrates the importance of imposing a term of supervised release for recidivist immigration offenders like the defendant. Indeed, outside of the immigration crime context, most offenders who appear before this Court face some term of supervised release following their release from prison. The purpose of a term of supervised release includes "rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism." *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015). Many of these goals can be achieved here, even if Sanchez-Jimenez is not actively supervised because of his removal.

The United States recommends a term of three years' supervised release. This would provide additional deterrence from future illegal reentries because, during the three years following his near-certain deportation: (1) any contact that he has with federal, state, or local law enforcement officers inside the United States would be reported to the probation officer assigned to monitor his release terms; (2) Sanchez-Jimenez would be subject to an additional two criminal history points under U.S.S.G. § 4A1.1(d) if he were to commit another illegal reentry or other offense; and (3) Sanchez-Jimenez could face a separate charge, and an additional prison term, for violating the conditions of his supervised release by illegally reentering the United States.

Although the Probation Office has not recommended supervised release, PSR ¶ 125, which is "ordinarily" unnecessary for a defendant likely to be deported after

his release from prison, see U.S.S.G. § 5D1.1(c), the court may consider a period of supervised release if "it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.* § 5D1.1, cmt. n.5.; *see also United States v. Gawron*, No. 18-2608 (7th Cir. July 3, 2019). In light of the defendant's unusual degree of recidivism, this easily qualifies as such a case. By providing a powerful disincentive to return immediately after deportation, a term of supervised release will encourage the defendant to put down roots and commit to a law-abiding life in Mexico. This will facilitate his reintegration into society, deter additional unlawful reentries, and reduce recidivism.

The government agrees with the conditions of supervised release set forth by the Probation Office. PSR ¶ 126. The government further requests that the Court impose the following discretionary condition, which is appropriate in light of his criminal and immigration history and necessary to protect the public from further crimes by him:

- Discretionary Condition No. 21: Defendant shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, defendant shall not reenter the United States without obtaining, in advance, the express written consent of the Secretary of the Department of Homeland Security.

9

## IV. CONCLUSION

For the reasons stated here, the government respectfully requests that this Court impose a sentence of 36 months and order a period of three years' supervised release.

                Respectfully Submitted,

                JOHN R. LAUSCH, JR.
                UNITED STATES ATTORNEY

By:   /s/ *L. Heidi Manschreck*
       L. HEIDI MANSCHRECK
       Assistant United States Attorney
       United States Attorney's Office
       219 South Dearborn, 5th Floor
       Chicago, Illinois 60604
       (312) 469-6205
       heidi.manschreck2@usdoj.gov

Dated: August 6, 2019